**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| O2COOL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15-cv-5008 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| ONE WORLD TECHNOLOGIES, INC., | ) | |
| and TECHTRONIC INDUSTRIES NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff O2COOL, LLC states as follows for its Complaint against Defendants One World Technologies, Inc. and Techtronic Industries North America, Inc.:

### Nature of the Action

1. This is a lawsuit for patent infringement (both utility and design), trademark infringement and unfair competition. Plaintiff O2COOL is a manufacturer of cooling and hydration products for consumers. Defendant Techtronic Industries North America, Inc. ("TTI-NA") is a manufacturer of a variety of products, including cooling and hydration products. Defendant One World Technologies, Inc. is, among other things, TTI-NA's distributor. Long after O2COOL developed a successful market for its distinctive line of cooling and hydration products, Defendants have begun knocking off O2COOL's products with imitations that infringe O2COOL's intellectual property rights. O2COOL seeks injunctive relief and has been damaged monetarily in an amount to be determined at trial. Further, O2COOL seeks to recover all court costs, attorneys' fees, and related expenses incurred by it as a result of Defendants' actions.

**Parties**

2.     O2COOL, LLC ("O2COOL") is a Delaware Limited Liability Company with a principal place of business at 168 N. Clinton St., Suite 500, Chicago, IL 60661.

3.     Upon information and belief, One World Technologies, Inc. ("OWT") is a Delaware Corporation with a principal place of business at 1428 Pearman Dairy Road, Anderson, South Carolina, 29625.

4.     Upon information and belief, Techtronic Industries North America ("TTI-NA") is a Delaware Corporation with a principal place of business at 1428 Pearman Dairy Road, Anderson, South Carolina, 29625.

**Jurisdiction and Venue**

5.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patents and trademarks).  O2COOL's federal claims arise under the trademark and patent laws of the United States, specifically 15 U.S.C. §§ 1051 *et seq.* (Lanham Act) and 35 U.S.C. §§ 1 *et seq.* (Patent Act).  Subject matter jurisdiction exists over any remaining claims under 28 U.S.C. § 1367(a) because the claims are so related that they form part of the same case or controversy.

6.     This Court has personal jurisdiction over Defendants because Defendants' products, including but not limited to the products accused herein, are offered for sale and are being sold in the State of Illinois and in this judicial district.  Defendants thereby committed the tortious acts described herein in Illinois, and in this judicial district, or otherwise established contacts with this judicial district sufficient to make the exercise of personal jurisdiction proper.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendants are subject to personal jurisdiction here, a substantial part of the events or

omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is the subject of the action is situated in this judicial district.

## FACTS COMMON TO ALL COUNTS

### *O2COOL's Business*

8.     Since its founding in 1992 by Linda Usher and James Larkin, O2COOL and its corporate predecessors (collectively, "O2COOL") have demonstrated themselves to be innovators in the field of personal cooling.  This has led to cooling and hydration innovations, including misting innovations, in fans, drinking bottles and other related products.  These misting products operate by ejecting a mist into the air, which results in the mist evaporating, thereby causing a cooling effect.  This principle is known as "flash evaporation."  Indeed, these products are "cool by design"™.  Over the past two decades, O2COOL has continually expanded its portfolio to a comprehensive line of products to combat summer heat.

### *MIST 'N SIP Classic Bottle*

9.     O2COOL first launched its MIST 'N SIP® line as a hydration backpack in 2005. Useful for a wide range of people including active individuals like bikers and hikers, the MIST 'N SIP hydration backpack provides the ability to cool the user outside (via the misting effect described above) and cool the user on the inside (via the drinking spout).  O2COOL later expanded its line with the MIST 'N SIP Classic Bottle (hereinafter the "Mist 'N Sip Classic Bottle Design") in approximately 2008.  The Classic bottle product provides the same type of relief as the hydration backpack, only in a more compact package.  The Mist 'N Sip Classic Bottle Design quickly became one of O2COOL's hottest selling products.

10.     The Mist 'N Sip Classic Bottle Design, shown below, is a misting water bottle which allows the user to either drink water from the bottle, or mist themselves with liquid from the bottle.



11.     The shape and arrangement of the features of the Mist 'N Sip Classic Bottle Design is distinctive and/or has attained secondary meaning through its extensive sales over the last seven years.

12.     O2COOL patented the Mist 'N Sip Classic Bottle Design, resulting in U.S. Design Patent No. D629,644 ("the '644 Design Patent"). O2COOL is the owner by assignment of the '644 Design Patent.

13.     The '644 Design Patent is valid, enforceable, and duly issued in compliance with Title 35 of the United States Code. A copy of the '644 Design Patent is attached hereto as Exhibit 1.

14.     O2COOL marks its products and packaging with the '644 Design Patent where applicable in conformity with 35 U.S.C. § 287.

15.     Since 2005, O2COOL has continuously used its MIST 'N SIP trademark. This trademark has been used in interstate commerce in the United States for the purpose of identifying O2COOL's products and distinguishing them from the products of others.

16.     O2COOL owns a federal trademark registration (U.S. Trademark Registration No. 339029) for its MIST 'N SIP mark *for drinking vessels*. A copy of the federal trademark registration certificate for O2COOL's MIST 'N SIP mark is attached hereto as Exhibit 2.

17.     The registration of MIST 'N SIP on the Principal Register with the United States Patent and Trademark Office constitutes prima facie evidence of the mark's validity and is conclusive evidence of O2COOL's exclusive rights to use the MIST 'N SIP mark in commerce in connection with the goods named therein, and commercially related goods. 15 U.S.C. § 1057. The registration of MIST 'N SIP also constitutes constructive notice of O2COOL's ownership and exclusive rights in MIST 'N SIP. 15 U.S.C. § 1072. In addition, O2COOL's rights in its MIST 'N SIP mark are incontestable pursuant to 15 U.S.C. § 1065.

18.     In accordance with 15 U.S.C. § 1111, MIST 'N SIP is, and has been, displayed on O2COOL's products or on the packaging, marketing, or advertising materials, for such products,

and is and was accompanied by the notation "®" to provide notice that MIST 'N SIP is federally registered.

*Other O2COOL Cooling and Hydration Products*

19.     In addition to its misting water bottles, O2COOL innovated and developed the market for misting fans.  Going back many years, O2COOL developed and launched a line of portable fans.  This line of fans includes fans that generate a mist to take advantage of the cooling effect previously discussed, and portable fans that operate on battery power.  Some examples of O2COOL's fans are shown below:



20.     O2COOL also developed and launched a line of cooling towels, ArcticCloth® cooling towels, made of highly absorbent and evaporative material.  These products come in a reusable plastic container as depicted below:



21.     The O2COOL products described above are referred to herein as Cooling and Hydration Products and the marketing used to promote such products has made them recognizable to the ordinary consumer.

22.     O2COOL has expended significant resources developing its Cooling and Hydration Products.  These expenditures included research, to understand the desires of consumers in this market, and design, to create the products in a way that would meet those desires while at the same time containing costs to meet the desired price points in retail stores. These resources also included significant expenditures in marketing and branding efforts, so that consumers would come to associate the Cooling and Hydration Products with O2COOL.

23.     To protect its expenditures of resources in the field of Cooling and Hydration Products, O2COOL possesses a portfolio of intellectual property rights in such products. This intellectual property includes, but is not limited to, utility patents, design patents and trademarks. These trademarks and patents are related to O2COOL's water bottles, fans, sports towels, and other Cooling and Hydration Products.  In addition, O2COOL has protectable common law rights in the overall appearance and commercial impression of the Cooling and Hydration

Products, including but not limited to the distinctive and patented Mist 'N Sip Classic Bottle Design.

24.     O2COOL's products, including those bearing the MIST 'N SIP trademark, are sold throughout the United States, including at various retailers including the Home Depot, Ace Hardware, Target, Walgreens, Lowes, Amazon, Bass Pro Shops, Bed Bath & Beyond, CVS Pharmacies, Dick's Sporting Goods, Lowes, Rite Aid, Sports Authority, and Walmart.

25.     O2COOL has extensively advertised and promoted its Cooling and Hydration Products, including those sold under its MIST 'N SIP trademark, throughout the United States by means of point of sale and retail floor displays, end cap displays, print advertisements, retailer advertisements, trade shows, and on its website o2-cool.com and throughout the Internet.

26.     As a consequence of O2COOL's continuous use of the trademarks and trade dress surrounding its Cooling and Hydration Products (including MIST 'N SIP and the Mist 'N Sip Classic Bottle Design) throughout the United States, and due to the significant investment of time, money and effort, widespread sales, and the high quality of O2COOL's products, the trademarks and trade dress associated with O2COOL's Cooling and Hydration Products have acquired value and are well-known to the consuming public and trade as identifying and distinguishing the source of O2COOL's products.

*O2COOL's Utility Patents*

27.     O2COOL also owns utility patents directed to personal cooling devices, including patents directed to the use of misting devices, with or without a fan.  These patents include, but are not limited to, United States Patent No. 5,620,633 "Spray Misting Device for Use with a Portable-Sized Fan" ("the '633 Patent") and United States Patent No. 7,243,860 "Portable Misting Device with Drinking Spout and Fan Assist" ("the '860 Patent").

28.     O2COOL marks its products with patent numbers where applicable in conformity with 35 U.S.C. § 287.

29.     O2COOL is the owner by assignment of both the '633 Patent and the '860 Patent.

30.     The '633 Patent and the '860 Patent are valid, enforceable, and duly issued in compliance with Title 35 of the United States Code.  Copies of the '633 Patent and the '860 Patent are attached hereto as Exhibits 3 and 4.

*O2COOL's Success in Home Depot*

31.     O2COOL has been selling Cooling and Hydration products in Home Depot stores since 2008.

32.     O2COOL has achieved great success at Home Depot, and over the years has continuously increased the quantity and breadth of its products sold at Home Depot stores.  Indeed, since their introduction in 2008, sales of O2COOL products at Home Depot stores have increased ten-fold.

**Defendants' Infringing "Arctic Cove" Products**

33.     Long after O2COOL established itself as a leader in Cooling and Hydration products with its success at Home Depot and other retail stores, Defendants emerged with their "Arctic Cove" line of products.  These products are advertised as being sold exclusively at Home Depot stores.  They have a consistent theme of bearing close resemblance to many of O2COOL's Cooling and Hydration Products.

34.     On information and belief, the Arctic Cove line of products (including those products discussed herein) are made, used, sold, offered for sale, and imported by OWT and TTI-NA.

35.     Defendants introduced their "Arctic Cove" product line with numerous similarities to O2COOL's products, including similarities in the breadth (the various different types of product offerings that O2COOL has been providing), the design (of each individual product), and the branding of the products.

36.     On information and belief, Arctic Cove's products are a result of slavish copying done by Defendants to mimic the features of O2COOL's Cooling and Hydration Products. This includes a facsimile of O2COOL's Mist 'N Sip Classic Bottle Design: Arctic Cove's "Drink N Mist" Bottle.

*Arctic Cove's "Drink N Mist" Bottle*

37.     Long after O2 Cool's Mist 'N Sip Classic Bottle Design gained popularity, Arctic Cove began selling nearly-identical misting water bottles, calling its products "**Drink N Mist**" bottles (Product No. MDMB001).



38.     In appearance alone, the bottles are nearly identical, especially in the arrangement of the features on the product-distinguishing cap, which features two nozzles of different heights and a looping strap affixed between the cap and the remainder of the bottle.

39.     To go further, both are named with a phrase containing three words, two of which are identical ("Mist" and "N"), with the other being a single syllable word joined in the front or back of the phrase having a similar meaning ("Sip" vs. "Drink").

40.     Thus, appearing on the Home Depot shelves next to O2COOL's successful products was a nearly-identical product with a substantially similar name.

41.     A closer look at the unique cap of the Mist 'N Sip compared to that of the Drink N Mist shows just how close the two products are.



42.     Both caps feature nearly identical nozzles with rubber stoppers, and adjacent to that nozzle, another nozzle approximately one-third the length for housing the misting apparatus. The trigger piece is also identical.  Adjacent to these features, both bottles feature an identical looping strap.

43.     O2COOL's Mist 'N Sip Classic Bottle Design is a distinctive, patented design that consumers associate with O2COOL.  As shown above, the Arctic Cove product is nearly identical in its design – and Defendants decided to name it something very similar to O2COOL's product.  Further compounding the similarities, these products are sold into the same channels of trade.

44. On information and belief, Defendants make, use, offer for sale, sell or import into the United States a product that infringes the '644 Design Patent, including, but not limited to the "Drink N Mist" bottle (Product No. MDMB001).

45. Yet Defendants' misappropriation of O2COOL's intellectual property is not limited to the Mist 'N Sip Classic bottle.

*Arctic Cove's "Personal Misting Bottle"*

46. On information and belief, Defendants make, use, offer for sale, sell or import into the United States a product that infringes one or more claims of the '860 Patent, including, but not limited to, the "Personal Misting Bottle" (Product No. MDM0161), an example of which is depicted below:



47. The Arctic Cove Personal Misting Bottle is a portable misting device that emits a mist from a discharge port drawn from an internal fluid holding reservoir.

*Arctic Cove's "18V Bucket Top Misting Fan"*

48. In addition, Defendants make, use, offer for sale, sell or import into the United States a product that infringes one or more claims of the '633 Patent, including, but not limited

to, the "18V Bucket Top Misting Fan" (Product No. MDF 0181), an example of which is depicted below:



49.     The Arctic Cove 18V Bucket Top Misting Fan, when coupled with a 5 gallon bucket as directed by Defendants, is a portable misting device that emits a mist from a discharge port in conjunction with a fan blade unit.

*Other Similarities In The Product Lines*

50.     The similarities of the breadth of the products do not end there.  For example, the Arctic Cove product line includes towels made out of highly absorbent and evaporative material, similar to those towels offered by O2COOL under its ArctiCloth® line.  O2COOL owns a federal trademark registration (U.S. Trademark Registration No. 4304747) for ARCTICLOTH in connection with *towels, namely, towels with hyper-evaporative properties* (a copy of the federal trademark registration certificate is attached hereto as Exhibit 5).

51.     The Arctic Cove cooling towel is depicted below in its product packaging next to O2COOL's ArctiCloth towel and packaging:



**Arctic Cove Cooling Towel**          **ArctiCloth Cooling Towel**

52.     On information and belief, Defendants sell all of the Arctic Cove products discussed herein via the Home Depot throughout the United States, including in this jurisdiction.

*Defendants' Awareness of O2COOL Products*

53.     O2COOL is an industry leader in its field, and has established its brand throughout the United States.

54.     O2COOL and Defendants are competitors, deal in the same channels of trade, and both do substantial business in the same stores.

55.     Upon information and belief, Defendants were aware of O2COOL's products and the intellectual property related thereto before Defendants launched their "Arctic Cove" product line.

## Count I
## Infringement of the '644 Design Patent under 35 U.S.C. § 271 by the Drink N Mist Bottle

56.     O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-45 and 53-55 of this Complaint.

57.     On information and belief, Defendants have been and are infringing the '644 Design Patent under one or more subsections of 35 U.S.C. § 271.

58.     Defendants directly infringe the '644 Design Patent by making, using, selling and/or offering for sale Drink N Mist bottles within the United States, and/or importing into the United States Drink N Mist bottles.

59.     On information and belief, Defendants know of the '644 Design Patent.

60.     Defendants' conduct has damaged and will continue to damage O2COOL in an amount to be determined at trial.

**Count II**
**Infringement of the '860 Patent under 35 U.S.C. § 271 by the Personal Misting Bottle**

61.     O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-36, 46-47, and 53-55 of this Complaint.

62.     On information and belief, Defendants have been and are infringing the '860 Patent under one or more subsections of 35 U.S.C. § 271.

63.     Defendants directly infringe the '860 Patent by making, using, selling and/or offering for sale Personal Misting Bottles within the United States, and/or importing into the United States Personal Misting Bottles.

64.     On information and belief, Defendants know of the '860 Patent.

65.     Defendants' conduct has damaged and will continue to damage O2COOL in an amount to be determined at trial.

**Count III**
**Infringement of the '633 Patent under 35 U.S.C. § 271 by the 18V Bucket Top Misting Fan**

66.     O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-36, 48-49, and 53-55 of this Complaint.

67.     Defendants have been and are infringing the '633 Patent under one or more subsections of 35 U.S.C. § 271 by using, selling and/or offering for sale 18V Bucket Top Misting

Fans within the United States, and/or importing 18V Bucket Top Misting Fans into the United States.

68.     Others directly infringe the '633 Patent by using, selling and/or offering for sale 18V Bucket Top Misting Fans when coupled with a 5 gallon bucket as directed by Defendants, within the United States.

69.     The 18V Bucket Top Misting Fans, when coupled with a 5 gallon bucket as directed by Defendants, are for the practice of the patented invention of the '633 Patent.

70.     On information and belief, Defendants know that others infringe the '633 Patent by using, selling and/or offering for sale 18V Bucket Top Misting Fans within the United States.

71.     On information and belief, such products are especially made or adapted for use in an infringement of the '633 Patent.

72.     On information and belief, Defendants intend for others to infringe the '633 Patent.

73.     Defendants' conduct has damaged and will continue to damage O2COOL in an amount to be determined at trial.

### COUNT IV
### Unfair Competition under 15 U.S.C. § 1125(a)

74.     O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-55 of this Complaint.

75.     Upon information and belief, before they introduced the Arctic Cove Product Line to the market, including but not limited to the Drink N Mist Bottle, Defendants were aware of O2COOL's protectable rights in its Cooling and Hydration Products, as described above, including but not limited to O2COOL's rights in its Mist 'N Sip Classic Bottle Design trade dress.

76.     O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design includes the total image of the product design.

77.     O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design is inherently distinctive and/or has acquired secondary meaning.

78.     O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design is nonfunctional.

79.     On information and belief, Defendants know of O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design.

80.     Defendants' selling, offering for sale, advertising and marketing the Drink N Mist Bottle creates, causes and/or contributes to a false association between Defendants and/or their Drink N Mist products and O2COOL and its Mist 'N Sip Classic Bottle Design products. Defendants' actions have caused and contributed to consumer confusion as to the origin of, or affiliation between, Defendants (and their products) and O2COOL and its products, and have traded unfairly upon O2COOL's goodwill and reputation, and continue to do so, in violation of 15 U.S.C. §1125(a).

81.     Defendants' advertising, marketing, selling and offering for sale of the Arctic Cove Product Line including but not limited to the Drink N Mist bottle described above, is with knowledge and in willful disregard of O2COOL's intellectual property rights in its Cooling and Hydration Products including its Mist 'N Sip Classic Bottle Design.

82.     Defendants' conduct has irreparably harmed O2COOL and will continue to irreparably harm O2COOL unless enjoined by this Court, as a result of which O2COOL is without an adequate remedy at law.

83.     Defendants' use of the Arctic Cove Product Line and the marketing materials described above has injured and continues to injure O2COOL in an amount to be determined at trial.

## COUNT V
### Trademark Infringement of MIST 'N SIP under 15 U.S.C. § 1114

84.     O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-45 and 53-55 of this Complaint.

85.     O2COOL owns U.S. Registration No. 3339029 for its MIST 'N SIP mark in connection with drinking vessels.

86.     This registration constitutes evidence of the validity of O2COOL's MIST 'N SIP mark, of O2COOL's ownership of the mark, and of the exclusive rights to use the mark under 15 U.S.C. § 1115.

87.     This registration is incontestable and is afforded all of the rights prescribed under 15 U.S.C. § 1065.

88.     On information and belief, Defendants know of O2COOL's MIST 'N SIP federal trademark registration.

89.     Defendants' use of DRINK N MIST in connection with drinking vessels is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with O2COOL, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by O2COOL.

90.     Defendants' use of DRINK N MIST caused and continues to cause irreparable harm to O2COOL, for which O2COOL has no adequate remedy at law.

91.     O2COOL also is entitled to recover as yet undetermined amounts of monetary damages pursuant to 15 U.S.C. § 1117.

92.     O2COOL has no adequate remedy at law inasmuch as money damages alone would not compensate O2COOL for the permanent loss of its proprietary rights, established goodwill and business reputation from the infringement caused by Defendants' use of DRINK N MIST.  Unless this Court acts to enjoin Defendants, Defendants' acts herein complained of will cause irreparable damage to O2COOL's property rights, goodwill, and reputation, and will cause great and irreparable damage to O2COOL.

**COUNT VI**
**Trademark Infringement of MIST 'N SIP under 15 U.S.C. § 1125(a)**

93.     O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-45 and 53-55 of this Complaint.

94.     O2COOL has continuously used its MIST 'N SIP mark in connection with misting water bottles since at least as early as 2005.

95.     On information and belief, Defendants know of O2COOL's rights in MIST 'N SIP.

96.     Defendants' use of DRINK N MIST in connection with misting water bottles is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with O2COOL, or as to the origin, sponsorship, or approval of Defendants' goods, services or commercial activities by O2COOL, and in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, and geographical origin of Defendants' goods, services, and commercial activities.

97.     Defendants' use of DRINK N MIST constitutes false representations, false descriptions, and false designations of origin of their goods and services.

98.     Defendants' activities have caused and, unless enjoined by this Court, will continue to cause irreparable harm to O2COOL, a likelihood of confusion and deception of

members of the trade and general public, and, additionally, injury to O2COOL's goodwill and reputation, for which O2COOL has no adequate remedy at law.

99.    O2COOL also is entitled to recover as yet undetermined amounts of monetary damages pursuant to 15 U.S.C. § 1117.

100.    Upon information and belief, Defendants were aware of O2COOL's prior use and registration of its MIST 'N SIP mark, making Defendants' actions willful.

101.    O2COOL is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

### COUNT VII
### Trademark Infringement of ARCTICLOTH under 15 U.S.C. § 1114

102.    O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-36 and 50-55 of this Complaint.

103.    O2COOL owns U.S. Registration No. 4304747 for its ARCTICLOTH mark in connection with towels.

104.    This registration constitutes evidence of the validity of O2COOL's ARCTICLOTH mark, of O2COOL's ownership of the mark, and of the exclusive rights to use the mark under 15 U.S.C. § 1115.

105.    On information and belief, Defendants know of O2COOL's ARCTICLOTH federal trademark registration.

106.    Defendants' use of ARCTIC COVE in connection with towels is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with O2COOL, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by O2COOL.

107.     Defendants' use of ARCTIC COVE in connection with towels caused and continues to cause irreparable harm to O2COOL, for which O2COOL has no adequate remedy at law.

108.     O2COOL also is entitled to recover as yet undetermined amounts of monetary damages pursuant to 15 U.S.C. § 1117.

109.     O2COOL has no adequate remedy at law inasmuch as money damages alone would not compensate O2COOL for the permanent loss of its proprietary rights, established goodwill and business reputation from the infringement caused by Defendants' use of ARCTIC COVE in connection with towels.  Unless this Court acts to enjoin Defendants, Defendants' acts herein complained of will cause irreparable damage to O2COOL's property rights, goodwill, and reputation, and will cause great and irreparable damage to O2COOL.

## COUNT VIII
### Trademark Infringement of ARCTICLOTH under 15 U.S.C. § 1125(a)

110.     O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-36 and 50-55 of this Complaint.

111.     O2COOL has continuously used ARCTICLOTH in connection with cooling towels since at least as early as 2012.

112.     On information and belief, Defendants know of O2COOL's rights in ARCTICLOTH.

113.     Defendants' use of ARCTIC COVE in connection with cooling towels is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with O2COOL, or as to the origin, sponsorship, or approval of Defendants' goods, services or commercial activities by O2COOL, and in commercial advertising or promotion,

misrepresents the nature, characteristics, qualities, and geographical origin of Defendants' goods, services, and commercial activities.

114.    Defendants' use of ARCTIC COVE in connection with cooling towels constitutes false representations, false descriptions, and false designations of origin of their goods and services.

115.    Defendants' activities have caused and, unless enjoined by this Court, will continue to cause irreparable harm to O2COOL, a likelihood of confusion and deception of members of the trade and general public, and, additionally, injury to O2COOL's goodwill and reputation, for which O2COOL has no adequate remedy at law.

116.    O2COOL also is entitled to recover as yet undetermined amounts of monetary damages pursuant to 15 U.S.C. § 1117.

117.    Upon information and belief, Defendants were aware of O2COOL's prior use and registration of its ARCTICLOTH mark, making Defendants' actions willful.

118.    O2COOL is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT IX
### Violation of Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/Et Seq.) Re MIST 'N SIP

119.    O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-45 and 52-55 of this Complaint.

120.    O2COOL has continuously used MIST 'N SIP in connection with misting water bottles since at least as early as 2005.

121.     On information and belief, Defendants know of O2COOL's rights in MIST 'N SIP.

122.     Defendants' use of DRINK N MIST in connection with misting water bottles has caused, and will continue to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, affiliation, connection or association with O2COOL.

123.     Defendants' use of DRINK N MIST in connection with misting water bottles constitutes a representation that Defendants' DRINK N MIST misting water bottle has sponsorship, approval, characteristics, uses, or benefits that it does not have, or that Defendants misting water bottle has a sponsorship, approval, status, affiliation or connection with O2COOL that Defendants do not have.

124.     O2COOL has been damaged by Defendants' deceptive trade practices, and, unless granted injunctive relief by this Court, O2COOL will continue to be damaged by Defendants' acts under 815 ILCS 510/2-3.

125.     O2COOL is also entitled to recover as yet undetermined amounts of monetary damages pursuant to 815 ILCS 510/3.

126.     Upon information and belief, Defendants were aware of O2COOL's MIST 'N SIP mark, making Defendants' actions willful and thus entitling O2COOL to recover its costs and attorneys' fees pursuant to  815 ILCS 510/3.

### COUNT X
### Violation of Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/Et Seq.) Re ARCTICLOTH

127.     O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-36 and 50-55 of this Complaint.

128.    O2COOL has continuously used ARCTICLOTH in connection with towels since at least as early as 2012.

129.    On information and belief, Defendants know of O2COOL's rights in ARCTICLOTH.

130.    Defendants' use of ARCTIC COVE in connection with towels has caused, and will continue to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, affiliation, connection or association with O2COOL.

131.    Defendants' use of ARCTIC COVE in connection with towels constitutes a representation that Defendants' ARCTIC COVE towel has sponsorship, approval, characteristics, uses, or benefits that it does not have, or that Defendants towel has a sponsorship, approval, status, affiliation or connection with O2COOL that Defendants do not have.

132.    O2COOL has been damaged by Defendants' deceptive trade practices, and, unless granted injunctive relief by this Court, O2COOL will continue to be damaged by Defendants' acts under 815 ILCS 510/2-3.

133.    O2COOL is also entitled to recover as yet undetermined amounts of monetary damages pursuant to 815 ILCS 510/3.

134.    Upon information and belief, Defendants were aware of O2COOL's ARCTICLOTH mark, making Defendants' actions willful and thus entitling O2COOL to recover its costs and attorneys' fees pursuant to  815 ILCS 510/3.

**COUNT XI**
**Violation of Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/Et Seq.)**
**Re Mist 'N Sip Classic Bottle Design**

135.    O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-45 and 52-55 of this Complaint.

- 24 -

136.    Upon information and belief, before they introduced the Arctic Cove Product Line to the market, including but not limited to the Drink N Mist Bottle, Defendants were aware of O2COOL's protectable rights in its Cooling and Hydration Products, as described above, including but not limited to O2COOL's rights in its Mist 'N Sip Classic Bottle Design trade dress.

137.    O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design includes the total image of the product design.

138.    O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design is inherently distinctive and/or has acquired secondary meaning.

139.    O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design is nonfunctional.

140.    On information and belief, Defendants know of O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design.

141.    Defendants' selling, offering for sale, advertising, and marketing the Drink N Mist bottle has caused, and will continue to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, affiliation, connection or association with O2COOL.

142.    Defendants' selling, offering for sale, advertising, and marketing the Drink N Mist bottle constitutes a representation that Defendants' Drink N Mist bottle has sponsorship, approval, characteristics, uses, or benefits that it does not have, or that Defendants' bottle has a sponsorship, approval, status, affiliation or connection with O2COOL that Defendants do not have.

143.     O2COOL has been damaged by Defendants' deceptive trade practices, and, unless granted injunctive relief by this Court, O2COOL will continue to be damaged by Defendants' acts under 815 ILCS 510/2-3.

144.     O2COOL is also entitled to recover as yet undetermined amounts of monetary damages pursuant to 815 ILCS 510/3.

145.     Upon information and belief, Defendants were aware of O2COOL's Mist 'N Sip Classic Bottle Design, making Defendants' actions willful and thus entitling O2COOL to recover its costs and attorneys' fees pursuant to  815 ILCS 510/3.

## COUNT XII
## Common Law Unfair Competition

146.     O2COOL incorporates by reference, as if fully set forth herein, paragraphs 1-55 of this Complaint.

147.     Upon information and belief, before they introduced the Arctic Cove Product Line to the market, including but not limited to the Drink N Mist Bottle, Defendants were aware of O2COOL's protectable rights in its Cooling and Hydration Products, as described above, including but not limited to O2COOL's rights in its Mist 'N Sip Classic Bottle Design trade dress.

148.     O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design includes the total image of the product design.

149.     O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design is inherently distinctive and/or has acquired secondary meaning.

150.     O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design is nonfunctional.

151.     On information and belief, Defendants know of O2COOL's trade dress for its Mist 'N Sip Classic Bottle Design.

152.    Defendants' selling, offering for sale, advertising and marketing the Drink N Mist Bottle creates, causes and/or contributes to a false association between Defendants and/or their Drink N Mist products and O2COOL and its Mist 'Sip Classic Bottle Design products. Defendants' actions have caused and contributed to consumer confusion as to the origin of, or affiliation between, Defendants (and their products) and O2COOL and its products, and have traded unfairly upon O2COOL's goodwill and reputation, and continue to do so, in violation of O2COOL's common law rights in its protectable trade dress.

153.    Defendants' advertising, marketing, selling and offering for sale of the Arctic Cove Product Line including but not limited to the Drink 'N Mist bottle described above, is with knowledge and in willful disregard of O2COOL's intellectual property rights in its Cooling and Hydration Products including its Mist 'N Sip Classic Bottle Design.

154.    Defendants' conduct has irreparably harmed O2COOL and will continue to irreparably harm O2COOL unless enjoined by this Court, as a result of which O2COOL is without an adequate remedy at law.

155.    Defendants' use of the Arctic Cove Product Line and the marketing materials described above has injured and continues to injure O2COOL in an amount to be determined at trial.

## JURY TRIAL DEMANDED

156.    O2COOL hereby demands a jury on all jury triable issues.

## PRAYER FOR RELIEF

**WHEREFORE**, O2COOL, prays for judgment against Defendants as follows:

A. Preliminarily and permanently enjoin Defendants and any person acting in concert with them from:

a. further infringement of U.S. Patent Nos. D629,644, 5,620,633 and 7,243,860;

b. using any of O2COOL's trademarks or trade dress, including, but not limited to those identified above, or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of O2COOL's trademarks or trade dress in connection with any goods or services or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination, or distribution of any cooling and hydration products;

c. using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act which can, or is likely to, lead members of the consuming public or trade to believe that Defendants are associated with O2COOL or that any product imported, manufactured, distributed, or sold by Defendants is in any manner associated or connected with O2COOL, or is authorized, licensed, sponsored, or otherwise approved by O2COOL;

d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above or taking any action that contributes to any of the activities referred to in subparagraphs (a) through (c) above.

B. Declare that the claims of U.S. Patent Nos. D629,644, 5,620,633 and 7,243,860 are valid, enforceable, and infringed by Defendants;

C. Award O2COOL damages resulting from Defendants' infringement of U.S. Patent Nos. D629,644, 5,620,633 and 7,243,860 as well as Defendants' infringement of O2COOL's protectable trademark and trade dress rights in its Cooling and Hydration Products;

D. That the Defendants, at their own expense, recall any and all products that bear any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of O2COOL's trademarks or trade dress from any distributors, retailers, vendors, or others to whom the Defendants have distributed or sold such products, and that such recall notices and other actions be taken within five (5) days after service of judgment with notice of entry thereof;

E. Defendants must deliver up for destruction all goods, advertising, literature and other forms of promotional material bearing or showing O2COOL's trademarks or a confusingly similar mark pursuant to 15 U.S.C. §1118;

F. Order the impounding and destruction of all Defendants' products that infringe U.S. Patent Nos. D629,644, 5,620,633 and 7,243,860;

G. Treble the damages in accordance with the provisions of 35 U.S.C. § 284;

H. Find the case to be exceptional and award appropriate relief thereunder;

I. Award O2COOL reasonable attorneys' fees;

J. Award O2COOL interest and costs;

K. Order an accounting of Defendants' profits resulting from sales of their products which infringe U.S. Patent Nos. D629,644, 5,620,633 and 7,243,860;

L.  Order an accounting for all gains, profits, and advantages derived from Defendants' acts of infringement of O2COOL's trademarks and trade dress pursuant to 15 U.S.C. § 1117;

M.  Defendants must pay O2COOL punitive damages due to Defendants' willful infringement;

N.  Award damages and injunctive relief pursuant to 815 ILCS 510/3;

O.  Defendants must report to this Court of their compliance with the foregoing within thirty (30) days of judgment; and

P.  For such other and further relief that the Court deems just and proper.


Date: June 8, 2015                                        Respectfully submitted,

                                                         **Thompson Coburn, LLP**


                                                         By: /s/ *Michael A. Parks*
                                                             Michael A. Parks (6217230)
                                                             mparks@thompsoncoburn.com
                                                             Jonathan G. Musch (6282011)
                                                             jmusch@thompsoncoburn.com
                                                             Michelle Ware Skinner (6277745)
                                                             mskinner@thompsoncoburn.com
                                                             THOMPSON COBURN LLP
                                                             55 E. Monroe St.
                                                             Chicago, IL 60603
                                                             (312) 346-7500
                                                             (312) 580-2201 (fax)

                                                         *Attorneys for Plaintiff O2COOL, LLC*