# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **O2COOL, LLC**, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|     v. | )   Case No: 15 C 5008 |
| | ) |
| **ONE WORLD TECHNOLOGIES, INC.** | ) |
| and **TECHTRONIC INDUSTRIES NORTH** | ) |
| **AMERICA, INC.**, | ) |
| | ) |
|        Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

O2COOL, LLC ("O2COOL") asserts that One World Technologies, Inc. and Techtronic Industries North America, Inc. (collectively "Techtronic") have infringed patents related to its cooling and hydration products. Having reached an impasse as to the meaning of certain claim terms contained in two of those patents -- U.S. Patent No. 5,620,633 filed April 15, 1997 (the "'633 Patent") and U.S. Patent No. 7,243,860 filed July 17, 2007 (the "'860 Patent") -- the parties now look to this Court for aid in claim construction.[1] This memorandum opinion and order conducts a <u>Markman</u> analysis to construe language contained in those patents.

## Tenets of Claim Construction

In an action claiming patent infringement, the court must resolve any disputed issues of claim construction before moving to the infringement claim (<u>Apex Inc. v. Raritan Computer,</u>

---

[1] Memoranda filed by the parties are cited "Mem. --" or "Resp. Mem.--" or "[2d] Supp. Mem. --," with prefixes of "O." and "T." for O2COOL and Techtronic respectively. Citations to the parties' Joint Appendix will take the form "J.A. --," while citations to the patents will take the form "col. --, ll. --."

Inc., 325 F.3d 1364, 1370-71 (Fed. Cir. 2003)).  Construction of a patent claim presents a question of law through which the court determines the scope and meaning of the claim (Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996)).

To that end claim terms should be given their ordinary and customary meaning as understood by a person of ordinary skill in the art as of the effective filing date of the patent application (Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). Claim language is the most important indicator of the meaning of the claim and should therefore be the central focus of the analysis (Middleton, Inc. v. Minn. Mining & Mfg. Co., 311 F.3d 1384, 1387 (Fed. Cir. 2002); Phillips, 415 F.3d at 1312).  Beyond the claim language, a construing court should look primarily to other intrinsic evidence: other claims within the same patent, the patent's specification and the prosecution history (Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc., 222 F.3d 951, 955 (Fed. Cir. 2000)).  But as helpful as a patent's specification may be in claim construction (Phillips, 415 F.3d at 1315), a court must be mindful to avoid importing limitations from the specification into the claims (id. at 1323).

If ambiguity lingers after the application of intrinsic evidence, a construing court may then turn to extrinsic evidence to supplement its interpretive efforts (Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583-84 (Fed. Cir. 1996)).  For example, judges may consult and rely on dictionary definitions, although extrinsic in nature, so long as the definitions do not contradict claim terms (id. at 1584 n.6).  But when the patentee dons a lexicographer's cap and crafts special definitions, those specially defined meanings trump ordinary usage -- and so dictionary definitions are not then a proper resource (id. at 1582; Phillips, 415 F.3d at 1316).

## Patent Subject Matter

O2COOL is a developer and manufacturer of cooling and hydration products (O. Mem. 1). At issue here are two such products -- the '633 Patent entitled "Spray Misting Device for Use With a Portable-Sized Fan" and the '860 Patent entitled "Portable Misting Device with Drinking Spout and Fan Assist" (id.). O2COOL alleges that Techtronic's Arctic Cove 18V Bucket Top Misting Fan and Arctic Cove Personal Misting Bottle respectively infringe those patents. But before the validity of those allegations can be considered, this Court is tasked with construing disputed claim terms found in the patents.

## Construction of Disputed '633 Patent Terms

At issue here is Claim 1 of the '633 Patent (col. 8, ll. 40-59, with disputed terms in boldface):

> A spray misting device for use with a portable fan for creating a cooling atomized mist spray, the fan having a predetermined outline and thickness with a front and a rear and enclosing a fan blade unit between a front grille and a rear grille, said spray misting device comprising:[2]
>
> **a body of given dimension having a hollow interior capable of holding a predetermined volume of a liquid and an applicator for providing an atomized mist spray of said liquid**;
>
> **means for releasably securing said body to the rear of the fan so that said body is positioned behind the fan** and **said applicator is positioned at a point above the fan blade unit**; and
>
> **means for actuating said applicator to issue said mist spray from above and in a direction towards a front of the fan blade unit;**
>
> whereby the fan blade unit generates a current of air which cools said atomized mist spray and delivers said spray to a user thereof.

---

[2] [Footnote by this Court] See Appendix.

Those disputed terms will be discussed seriatim following a recitation of each term alongside the parties' dueling constructions of that term. What follows in the table format employed throughout this opinion are the parties' respective proposed constructions, taken from their submission of a Joint Claim Construction Report (Dkt. No. 49).

| **Term:** "a body of given dimension having a hollow interior capable of holding a predetermined volume of a liquid and an applicator for providing an atomized mist spray of said liquid" | |
|---|---|
| **O2COOL:** A hollow reservoir of a definite size capable of holding a liquid [and an applicator for providing an atomized mist spray of said liquid] | **Techtronic:** A container having a hollow interior capable of holding a predetermined volume of a liquid and an applicator attached to the container for providing an atomized mist spray of said liquid |

This dispute over whether the applicator must be attached to the "body" is the predictable result of the patentee's unclear drafting, which leaves ambiguous whether "an applicator . . ." as well as "a hollow interior" is an object of the word "having." But that ambiguity can be resolved by looking to multiple embodiments described in the specification that would be excluded by Techtronic's proposed construction. To take one example, fig. 2 (see '633 Patent at col. 3, ll. 43-44) shows an applicator attached to the screw cap, which screw cap neither party asserts is a part of the body. Likewise, in fig. 6 (see '633 Patent at col. 5, ll. 23-24) the applicator body is "integrally formed with the screw cap," while the screw cap is "attached over the outlet" of the body. Constructions that exclude preferred embodiments are "rarely, if ever, correct" (Vitronics, 90 F.3d at 1583). Because Techtronic's proposed construction would exclude such embodiments in which the applicator is attached to the screw cap rather than to the body, this Court construes "a body of given dimension having a hollow interior capable of holding a predetermined volume of a liquid and an applicator for providing an atomized mist spray of said liquid" in accord with O2COOL's proposal.

| **Term:** "means for releasably securing said body to the rear of the fan so that said body is positioned behind the fan"[3] | |
|---|---|
| **O2COOL function:** releasably securing said body to the rear of the fan so that said body is positioned behind the fan | **Techtronic function:** releasably securing the container to the rear of the fan so that the whole container is positioned behind the fan |

Here the parties dispute whether the entire body or only part of it is required to be positioned behind the fan. O2COOL (O. Mem. 6) contends that Techtronic's construction would impermissibly exclude numerous embodiments that show the base of the body positioned partially in front of the fan. Techtronic's Resp. Mem. 6-7 does not really challenge that contention but suggests that the body does not include the base. But the specification ('633 Patent, with numeric figure references omitted) states repeatedly that the body includes the base:

    3:19-20:       "A spray misting device includes a body having an outline with a supporting base . . ."

    5:12-15:       "A body of the misting device is shaped similarly to the corresponding misting device of the first and second preferred embodiments and includes a base . . ."

    6:49-51:       "A body of the misting device . . . includes a base . . ."

Because the body can plainly include a base, Techtronic's construction would exclude multiple embodiments.

Techtronic's Resp. Mem. 7 posits that the doctrine of claim differentiation precludes the result reached here. Under that doctrine, as reconfirmed in Liebel Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 910 (Fed. Cir. 2004):

---

[3] [Footnote by this Court] Both parties agree that this is a means-plus-function limitation (see 35 U.S.C. § 112(f)) but dispute the function. As the structures corresponding to that function are not in dispute (T. Mem. 9), there is no need to recite those structures here.

the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim.

Here dependent claim 3 ('633 Patent at col. 8, ll. 67-9:2) discloses a

> body further comprising a base, an ergonomically formed midsection extending upward from said base, and an outlet which is engaged by a screw cap.

Techtronic's Resp. Mem. 7 contends that because dependent claim 3 does include a "body further comprising a base," the "body" referred to in independent claim 1 must not include a base. But that contention misses the mark entirely: Under the doctrine of claim differentiation as again explained by Liebel Flarsheim, all that can be gleaned from the language of dependent claim 3 is that the body adverted to in independent claim 1 is not <u>required</u> to include a base. It certainly does not follow that the body in independent claim 1 <u>cannot</u> include a base. On the contrary, because claim 1 is presumed to be broader than claim 3, claim 1 necessarily covers bodies with a base.

In sum, Techtronic's effort to salvage its construction of the disputed term fails. It must be rejected in favor of O2COOL's more workable definition.

| Term: "said applicator is positioned at a point above the fan blade unit" ||
|---|---|
| **O2COOL:** at least a portion of the applicator is at an elevation higher than the fan blade unit | **Techtronic:** the applicator is positioned at a point higher than the highest portion of the fan blade unit |

This dispute mirrors the preceding one in that the parties disagree on whether the applicator must be located <u>entirely</u> above the fan blade unit. And it can be resolved in the same way, for the specification is clear that the applicator includes a stem that enables the drawing of water from the body (see col. 3, l. 40, reading "The applicator includes a stem . . ."). In the majority of embodiments, that stem extends well beneath the fan unit (<u>see</u>, <u>e.g.</u>, figs. 2 (J.A.

- 6 -

002), 4 (J.A. 003) and 6 (JA 004)). It follows then that adopting Techtronic's definition would exclude multiple preferred embodiments and must therefore be rejected.[4]

Techtronic's Resp. Mem. 11-12 assertion that the patentee disavowed the broader construction proposed by O2COOL likewise calls for rejection. While the patentee indeed distinguished the prior art because it "directs much of the delivered fluid to the back of the fan blades . . ." ('633 Patent at col. 1, ll. 49-51), that distinction concerned the location from which the spray is issued, not the location of the applicator as that term is defined in the patent.

Hence this Court again adopts O2COOL's proposed construction. To this point, then, O2COOL's counsel have pitched a shutout.

| **Term:** "means for actuating said applicator to issue said mist spray from above and in a direction towards a front of the fan blade unit" | |
|---|---|
| **O2COOL function:** Actuating said applicator to issue said mist spray | **Techtronic function:** Actuating the applicator to issue the mist spray from above and in a direction towards a front of the fan blade unit |

Lastly, this dispute concerns whether the function recited should be construed to include "from above and in a direction towards a front of the fan blade unit." But the parties agree that this is a means-plus-function limitation (see 35 U.S.C. § 112(f)), and as Phillips, 415 F.3d at 1311 has explained:

> Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function.

---

[4] Dependent claim 7 discloses "a stem extending downwardly from said applicator body . . ." ('633 Patent at col. 9, ll. 18-19). As such, Techtronic's Resp. Mem. 8-9 contends that the doctrine of claim differentiation gives rise to a presumption that the applicator disclosed in independent claim 1 must not include a stem. But that contention can be rejected on the same ground that has been explained in the earlier discussion of claim differentiation: It is simply backward to argue that dependent claims limit the scope of independent claims.

Here the description of the position from which the applicator issues a mist spray is structural, not functional (see TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C., 375 F.3d 1126, 1135 (Fed. Cir. 2004), rejecting the assertion of a means-plus-function limitation on the ground that the disputed claim terms recited not only means but also location).

This Court therefore construes the function in conformity with O2COOL's proposal. In sum, O2COOL has prevailed on all of the Markman disputes as to the terms of the '633 Patent.

### **Construction of Disputed '860 Patent Terms**

Claim 16 of O2COOL's '860 Patent (col. 11, ll. 11-11:29, with disputed terms in boldface) reads:

> A portable misting device, comprising:
>
> a body having an internal and fluid holding reservoir;
>
> a fill port for refilling said fluid holding reservoir;
>
> at least one **discharge port** separate from said fill port and in fluidic communication with said reservoir;
>
> a fluid conveying conduit extending from said discharge port and terminating in an **orifice, said orifice being actuated to issue a mist spray**; and
>
> said orifice further comprising a **hand-held pump subassembly** for issuing fluid in at least one of said mist spray and a steady fluid flow, said pump subassembly further comprising:
>
> an **inlet plenum**;
>
> a **control valve** secured to a first outlet associated with said plenum; and
>
> a valve actuator arm pivotally mounted to said **control valve** by an interiorly disposed ball valve such that, upon being engaged, said control valve issues said mist spray.

Just as with the '633 Patent, each disputed term will be addressed in turn.

| **Term:** "discharge port" | |
|---|---|
| **O2COOL:** An opening in the body for discharging liquid | **Techtronic:** An outlet port that is spaced apart from the inlet port and dedicated for allowing fluid to flow out of the fluid holding reservoir |

At the outset it is difficult to understand Techtronic's basis for deviating from the ordinary meaning of "discharge port" in its proposed construction. Techtronic's Mem. 22 makes much of the fact that the discharge port should be separated from the inlet port, but a portion of the claim not in dispute -- "separate from said fill port" ('860 Patent at col. 11, l. 14) -- already makes that perfectly clear and would indeed render Techtronic's construction redundant. It is likewise difficult to understand why the ordinary term "discharge" would need to be replaced with the far more convoluted "outlet . . . dedicated for allowing fluid to flow out of the fluid holding reservoir." O2COOL's straightforward (if somewhat tautological) construction of "discharge port" is therefore adopted.

| **Term:** "orifice, said orifice being actuated to issue a mist spray" | |
|---|---|
| **O2COOL:** End of a fluid conveying conduit and including a hand-held pump subassembly [said orifice being actuated to issue a mist spray] | **Techtronic:** Indefinite |

Here Techtronic has charged that the disputed claim term is indefinite. As recently explained by Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014):

> In place of the "insolubly ambiguous" standard, we hold that a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

O2COOL seeks to counter Techtronic's contention by pulling its proposed construction directly from the claim language ('860 Patent at col. 11, ll. 16-22):

- 9 -

> a fluid conveying conduit extending from said discharge port and terminating in an orifice, said orifice being actuated to issue a mist spray; and
>
> said orifice further comprising a hand-held pump subassembly for issuing fluid in at least one of said mist spray and a steady fluid flow, said pump subassembly further comprising:

But construing the term along those lines would render the specification nonsensical. Consider the following sentence ('860 Patent at col. 5, ll. 63-67, with numeric figure references omitted):

> the pump subassembly includes an inlet plenum, a piston pump secured to a first outlet associated with the plenum, an orifice in turn defining an outlet location of the piston pump.

How could an orifice include a pump subassembly if that pump subassembly includes an orifice? Indeed, that is not the only instance in which the claim defines "orifice" contrary to how the term is used in the specification -- '860 Patent at col. 8, ll. 40-46, again with numeric figure references omitted:

> Referring also to FIG. 22, a quick-connect fitting extends from a remote end of the conduit, a mist/pour sub-assembly incorporating an interengaging quick connect fitting securing to the conduit end and incorporating orifices for issuing both the mist spray and steady stream fluid flow, reference again being made to the disclosure of FIGS. 8 and 8A.

Plainly a subassembly cannot "incorporat[e]" orifices if those orifices "includ[e]" that subassembly.

Earlier this year Trustees of Columbia Univ. in City of New York v. Symantec Corp., 811 F.3d 1359, 1366-67 (Fed. Cir. 2016) (internal citations omitted) found two patent claims to be indefinite on the ground that they

> conflate a "byte sequence feature," which is a feature extracted from machine code instructions, with the extraction of "resource information," which is not a machine code instruction. Specifically, the claims describe

- 10 -

> the step of extracting machine code instructions from something that does not have machine code instructions. The claims are nonsensical in the way a claim to extracting orange juice from apples would be, and are thus indefinite.

On that score Trustees of Columbia Univ. is apples-to-apples with the dispute here: O2COOL's construction -- which flows directly from and adopts the claim language -- would render the specification utterly nonsensical. That compels this Court to find the claim term indefinite.

| **Term:** "a hand-held pump subassembly" | |
|---|---|
| **O2COOL:** An assembly comprising an inlet plenum, a control valve, and a valve actuator arm | **Techtronic:** A hand-held unit remote from the container that includes: (i) a piston pump connected to a first outlet of the plenum; (ii) a manually operable piston pump actuator; (iii) a flapper-type check valve connected to a second outlet of the plenum; and (iv) a bite valve connected to the second outlet |

O2COOL's construction again tracks the language of the claim, which recites ('860 Patent at col. 11, ll. 21-29) that the hand-held pump subassembly "further compris[es]" an inlet plenum, valve actuator arm and control valve. Techtronic's Mem. 19 contends that because "a hand-held pump subassembly" has no ordinary meaning, it should be defined based on an embodiment disclosed in the specification. But that contention impermissibly leapfrogs over the first step in the analysis: reviewing the claim language itself (see Middleton, 311 F.3d at 1387). And that language clearly defines the subassembly as including three particular elements -- elements that are not even found in Techtronic's construction.

Moreover, Techtronic's proposed reading poses still another problem. Its 2d Supp. Mem. 4-5 points out that the term "further comprising" ('860 Patent at col. 11, l. 22) signals that what follows are additional modifications to "hand-help pump subassembly." So Techtronic, id. at 4 contends that:

> the term must mean something on its own, separate and apart from the inlet plenum, control valve, and valve actuator arm. . . .

But Techtronic provides no predicate whatever for why that is so. While a simple "comprising" likely would have been the clearer word choice, the patentee appears to have consistently used "further comprising" to transition from an object's function to its elements ('860 Patent at col. 11, ll. 16-19 with emphasis added):

> a fluid conveying conduit extending from said discharge port and terminating in an orifice, said orifice being actuated to issue a mist spray; and
>
> said orifice **further comprising** a hand-held pump subassembly for issuing fluid in at least one of said mist spray and a steady fluid flow, said pump subassembly **further comprising**:
>
> an inlet plenum;
>
> a control valve secured to a first outlet associated with said plenum; and
>
> a valve actuator arm pivotally mounted to said control valve by an interiorly disposed ball valve such that, upon being engaged, said control valve issues said mist spray.

That sentence structure may be inartful, but there is no predicate for its being fatal to O2COOL's construction.

While O2COOL's construction reasonably incorporates the subassembly's elements, it unreasonably omits the limitation that the subassembly is hand-held. Indeed, in the April 12 Markman hearing held by this Court O2COOL's counsel agreed that adding "hand-held" would be a reasonable -- if in its view unnecessary -- addition to its proposed construction. But "hand-held" is a clear limitation disclosed by the claim and must as such be included in the claim's construction. In sum, this Court will construe "a hand-held pump subassembly" as "a hand-held assembly comprising an inlet plenum, a control valve, and a valve actuator arm."

| **Term:** "inlet plenum" | |
|---|---|
| **O2COOL:** Liquid-receiving volume | **Techtronic:** A device remote from the container that spawns more than one stream for drinking, spraying, squirting as needed for users to have in hand |

As to this term, Techtronic seeks to impose two limitations on the ordinary meaning of "inlet plenum" -- that the plenum should be remote and that it should spawn more than one stream. On that first issue this Court's construction of "hand-held pump subassembly" should address Techtronic's concern, for the "inlet plenum" has been construed to be an element of the hand-held pump subassembly and is therefore necessarily hand-held and remote from the main body.

Techtronic's second proposed limitation -- that the plenum must spawn two streams -- collides head-on with the claim language ('860 Patent at col. 11, ll. 19-22, with emphasis added):

> said orifice further comprising a hand-held pump subassembly for issuing fluid in **at least one of** said mist spray and a steady fluid flow, said pump subassembly further comprising:

From that claim language it is clear that the subassembly issues fluid in "at least one of" a mist spray and steady fluid flow -- not necessarily both. Moreover, when the patent is read in its entirety it becomes apparent that what distinguishes claim 16 from other claims is that numerous other claims expressly disclose a dual function -- drinking and misting[5] -- while claim 16 does not.

---

[5] See, e.g., claim 14 ('860 Patent at col. 10, ll. 62-67 and col. 11, ll. 1-3 (emphasis added)):

> said orifice further comprising a hand-held pump subassembly for issuing fluid in at least one of said mist spray and a steady fluid flow, said pump subassembly further comprising at least one of a flapper-type check valve in operative communication with a second outlet associated with said plenum,

(continued)

Techtronic's contention that O2COOL disclaimed a broader scope for claim 16 during prosecution must also be rejected. In that respect Techtronic seeks to hang its figurative hat on comments submitted regarding a later-cancelled dependent claim in which the patentee distinguished the prior art (J.A. 0210):

> Lau does not teach or suggest the provision of an inlet plenum. The closest Lau comes to a plenum is the tee connection, as shown in his Figures 4 and 5. Accordingly, there is no remote plenum which spawns more than one stream for drinking, spraying, squirting as needed for the user to have in hand. Rather, everything in Lau forms a part of a body that attaches to the bottle.

Techtronic posits that the just-quoted patentee's statement effectively disavowed a broader construction of inlet plenum that would allow one or both of misting and drinking. But as explained in 3M Innovative Props. Co. v. Tredegar Corp., 725 F.3d 1315, 1322 (Fed. Cir. 2013):

> This court does not rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal.

On that score the alleged disavowal is far from "clear and unmistakable." For example, the patentee distinguished the prior art primarily on the grounds (1) that it involved a tee connection rather than a plenum and (2) that the tee connection was not attached to the bottle. That statement is simply not clear enough to constitute a disavowal that would overcome the claim's

---

(footnote continued)
> and a <u>drinking</u> <u>nipple</u> incorporating a bite valve insert, deformation of said insert permitting a steady stream fluid flow through said nipple.

clear language -- language confirming that the plenum can issue <u>at least one of</u> a mist spray and steady fluid flow. Once more O2COOL's proposed construction is adopted.[6]

| **Term:** "control valve" | |
|---|---|
| **O2COOL:** A liquid flow valve moveable between open and closed positions | **Techtronic:** A valve for controlling the flow of liquid that includes an interiorly disclosed ball valve |

On this final contested term the parties dispute whether "control valve" should be defined to include "an interiorly disclosed ball valve." But any such addition is wholly unnecessary, given the language of the claim ('860 Patent at col. 11, ll. 24-29, with emphasis added):

> a control valve secured to a first outlet associated with said plenum; and
>
> a valve actuator arm pivotally mounted to said control valve **by an interiorly disposed ball valve** such that, upon being engaged, said control valve issues said mist spray.

Because the claim plainly discloses that the valve actuator arm is mounted to the control valve by the ball valve, there is no need to add that limitation to the construction. For one last time O2COOL's proposed construction is adopted.

## Conclusion

For the reasons that have been set forth in this opinion, this Court adopts the following constructions of the disputed claim terms:

| '633 Patent Term | Construction |
|---|---|
| a body of given dimension having a hollow interior capable of holding a predetermined volume of a liquid and an applicator for providing an atomized mist spray of said liquid | A hollow reservoir of a definite size capable of holding a liquid [and an applicator for providing an atomized mist spray of said liquid] |

---

[6] All of that said, however, it strikes this Court that "liquid-receiving volume" is really an awkward way of conveying the meaning of the word "plenum," which in plain English is simply a synonym for a "space" that contains something (as contrasted with a "vacuum" -- an unoccupied "space"). It remains a mystery why some lawyers seem to think that what they view as a more elegant word should be used rather than a straightforward word in common use.

| | |
|---|---|
| means for releasably securing said body to the rear of the fan so that said body is positioned behind the fan | releasably securing said body to the rear of the fan so that said body is positioned behind the fan |
| said applicator is positioned at a point above the fan blade unit. | at least a portion of the applicator is at an elevation higher than the fan blade unit |
| means for actuating said applicator to issue said mist spray from above and in a direction towards a front of the fan blade unit | actuating said applicator to issue said mist spray |
| **'860 Patent Term** | **Construction** |
| discharge port | An opening in the body for discharging liquid |
| orifice, said orifice being actuated to issue a mist spray | Indefinite |
| a hand-held pump subassembly | A hand-held assembly comprising an inlet plenum, a control valve, and a valve actuator arm |
| inlet plenum | liquid-receiving volume |
| control valve | A liquid flow valve moveable between open and closed positions |

With the parties having been apprised of this Court's constructions, they will now have to reassess their positions as to the underlying infringement action. To enable them to update this Court on that score, this action is set for a status hearing at 8:45 a.m. May 27, 2016.

　　　　　　　　　　　　　　　　　*/s/ Milton I. Shadur*
　　　　　　　　　　　　　　　　　────────────────────────────
　　　　　　　　　　　　　　　　　Milton I. Shadur
　　　　　　　　　　　　　　　　　Senior United States District Judge

Date: May 5, 2016

## Appendix

There is a troubling (at least to this Court) tendency these days to use the paired words "comprised of" -- a locution that alters the historical, and indeed still the proper, use of the word "comprise." But on that score the Court of Appeals for the Federal Circuit has not fallen into that trap -- instead it has itself engaged in the hallowed patent law practice of being its own lexicographer. H.W. Fowler's <u>Modern</u> <u>English</u> <u>Usage</u> at 387 (3d ed. 1996) has explained what that authority views as the appropriate use of "comprise" by distinguishing it from "include":

> When two words such as <u>include</u> and <u>comprise</u> have roughly the same meaning, examination will generally reveal a distinction; and the distinction between the present two seems to be that <u>comprise</u> is appropriate when the content of the whole is in question, and <u>include</u> only when the admission or presence of an item is in question: good writers say <u>comprise</u> when looking at the matter from the point of view of the whole, <u>include</u> from the part. With <u>include</u>, there is no presumption (though it is often the fact) that all or even most of the components are mentioned; with <u>comprise</u>, the whole of them are understood to be in the list.[1]

But as a matter of its own lexicography, the Federal Circuit has turned that long-established and long-adhered-to distinction on its head. <u>MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.</u>, 687 F.3d 1377, 1383 (Fed. Cir. 2012) has quoted earlier caselaw in that Circuit that explains that in patent law:

> The transition "comprising" creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements.

For purposes of this opinion, then, this Court will treat "comprising" in accordance with the Federal Circuit's usage.

---

[1] Fowler's fourth edition, issued just last year, is not available in this District Court's library, but the just-quoted language has changed only slightly from that in the second edition, issued a half century ago in 1965 and a valued reference source in this Court's own library ever since its publication. There is no reason to believe that the long-established distinction in meaning described in the above quotation have been altered in the most recent version of the work.